**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 17 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JUANITA MINNICK,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,   *

      Defendant-Appellee.

No. 97-5184
(D.C. No. 96-CV-285-J)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** **

---

Before **BALDOCK** , **EBEL** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

\*      Pursuant to Fed. R. App. P. 43(c), Kenneth S. Apfel is substituted for
John J. Callahan, former Acting Commissioner of Social Security, as the
defendant in this action.

\*\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

Plaintiff appeals from an order of the magistrate judge [1] affirming the Commissioner's decision to deny her application for disability insurance benefits. The Commissioner concluded that plaintiff did not have a severe impairment on or before December 31, 1991, the last day plaintiff satisfied the applicable insured-status requirements and, consequently, denied benefits at step two of the controlling five-step analysis.  See generally  Williams v. Bowen , 844 F.2d 748, 750-52 (10th  Cir. 1988).  We closely examine the record as a whole to determine whether the Commissioner's decision is supported by substantial evidence and adheres to the governing legal standards.  See Washington v. Shalala  , 37 F.3d 1437, 1439 (10th  Cir. 1994).  The scope of our review, however, is limited to the issues properly preserved and presented on appeal.  See Berna v. Chater  , 101 F.3d 631, 632-33 (10th  Cir. 1996).  Guided by these principles, we affirm the Commissioner's decision for the reasons that follow.

When the Administrative Law Judge (ALJ) decided this case in 1995, plaintiff suffered from recently developed diabetes, controlled by medication, alleged muscular-skeletal pain, and certain physical weaknesses suggestive of a

---

[1]    The parties agreed to disposition of the case by the magistrate judge pursuant to 28 U.S.C. § 636(c)(1).  Accordingly, our jurisdiction arises under § 636(c)(3) and 28 U.S.C. § 1291.

previous cerebrovascular accident (CVA).  We focus on the last condition, which

provides the sole basis for plaintiff's judicial challenge to the denial of benefits.

However, to understand that challenge, and to appreciate the administrative

determination against which it is directed, it will be helpful first to review the

medical record in general, chronological terms.

The medical record dates from 1977 through 1994, when the ALJ heard the

case.  It includes notes from the late 1970's reflecting complaints about fatigue,

weakness, and memory problems, though with "[e]xamination reveal[ing]

completely normal findings neurologically and from the vascular viewpoint."

Appendix (App.) II at 276.  Minor, unrelated complaints prompted single visits in

the years 1980 through 1982.    See id.  Then there is a break until 1985, when

menstrual problems brought plaintiff back to her physician and ultimately resulted

in a hysterectomy.    See id. at 235, 264-65, 276.  After isolated visits in 1986,

1987, and 1989,   see id. at 235, plaintiff next sought medical attention in 1993,

when a spate of reports dealing with various cardiovascular, neurological,

pulmonary, hematological, psychiatric, gastronomic, and muscular-skeletal

complaints appears in the record and continues through 1994.    See generally   id.

at 151-52; 172-276.

The earliest 1993 notes do not mention a CVA or CVA-related complaints.

See id. at 235.  Shortly thereafter, initial medical references to a possible CVA

indicate a fairly recent occurrence. See id. at 207-08 (two May 1993 test reports reciting CVA within the last year as reason for referral); see also id. at 244 (July 1993 report reciting history of stroke "1 ½ - 2 years ago"). Moreover, the 1993 notes do not consistently reflect plaintiff's representation of the incident as being severe. Indeed, even in early 1994 plaintiff reiterated the characterization of her suspected CVA as "a little stroke." Id. at 232. After plaintiff filed her application for social security benefits in mid-February 1994, however, the record finally refers to the alleged 1990 CVA that would come to be the focus of this disability-onset case. See id. at 246 (psychiatric report reciting patient history). From that time on, plaintiff has held to her account of a stroke in November 1990 so severe that it left her physically incapacitated for up to a year, unable to speak for even longer, and subject to residual weakening several years later.

The ALJ rejected this account as incredible in light of plaintiff's medical record, reasoning that any event at all like the one plaintiff alleged would have prompted her to solicit some medical attention. Plaintiff asserted that she was afraid to do so, after the death of her sister in a hospital in 1988. However, when asked by the ALJ if she could explain why this same fear did not prevent her from seeking medical attention in 1993 (for both severe and non-severe complaints), plaintiff simply responded "no." Id. at 50. Indeed, we note plaintiff saw

a physician in 1989 as well, so her asserted post-1988 fear had been inoperative before and after the alleged stroke.

On appeal, plaintiff contends the ALJ did not follow the directives set out in Social Security Ruling (SSR) 83-20, which "state[s] the policy and describe[s] the relevant evidence to be considered when establishing the onset date of disability." 1983 WL 31249 at *1. More specifically, she complains that the ALJ (1) failed to call a medical advisor to assist in assessing her allegations regarding the November 1990 stroke, and (2) ignored lay testimony, and particularly her own declaration of onset, that supported those allegations.

The cited ruling recognizes that, when dealing with a progressively worsening condition, it is sometimes necessary to make an inference about the onset of disability "prior to the date of the first recorded medical examination." Id. at *3. If this situation arises, *and* the pertinent medical record is ambiguous, the ALJ should call on the services of a medical advisor to inform his or her inferential judgment. See Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995) (applying SSR 83-20); accord Spellman v. Shalala, 1 F.3d 357, 362-63 (5th Cir. 1993) (citing cases). This is not such a case, for two reasons.

First, on plaintiff's own account, the asserted 1990 stroke did not involve a progressive condition at all. Rather, she alleges the occurrence of a discrete and immediately disabling event that, but for the lack of (expected) contemporaneous

treatment, would have been amenable to definitive dating without any need for the uncertain retroactive/inferential determination with which SSR 83-20 is concerned. Whether such an event actually occurred at all is not a question that calls for a medical advisor's opinion about when certain but gradual deterioration may have reached the point of disability. [2] In short, the ALJ was entitled to assess and reject this allegation like any other fact not borne out by the surrounding circumstances.

Second, we are not dealing with the onset of a disabling impairment that can fairly be characterized as occurring "prior to the date of the first recorded medical examination." 1983 WL 31249 at *3. Plaintiff has a lengthy medical record extending before and after the alleged onset date; she cannot seek reversal of the ALJ's determination under SSR 83-20 simply by pointing to a fractional interim period -- less than four years in a seventeen-year record -- during which, without credible explanation, she did not secure the medical attention her alleged condition would clearly have prompted anyone to seek. Cf. James v. Chater ,

_____

[2]      Plaintiff argues only that an immediate and totally disabling CVA occurred in November 1990, and has not claimed that, should this account be found incredible, perhaps a less severe CVA occurred sometime later in the insured period prior to December 1991. Given this all-or-nothing approach, we have no occasion here to consider SSR 83-20's application to progressively *improving* conditions, where a medical advisor's opinion might assist the ALJ in working backward from current, resolving symptoms to a prior disability within a broad range of possible onset dates.

96 F.3d 1341, 1343 (10th Cir. 1996) (holding claimant's invocation of SSR 83-20 frivolous where "there were pertinent examinations both before and after the alleged onset date"). On the contrary, the ALJ properly relied on just this omission in finding that the alleged 1990 stroke did not happen.

We have little to add with respect to the ALJ's treatment of plaintiff's formal declaration of disability and the lay testimony elicited in support thereof. The ALJ considered this evidence, but rejected it as incredible in light of plaintiff's contemporaneous conduct and the medical record (which, moreover, to the extent the "personal histories" in the reports are patient-derived, reflects flatly inconsistent statements by plaintiff herself). In the determination of onset, as in disability cases generally, the medical record is primary; the claimant's averments and proffered testimony are probative only to the extent consistent with the medical evidence. See 1983 WL 31249 at *2, *3; see also Reid, 71 F.3d at 373. We discern no error in the consideration of plaintiff's evidence and, accordingly, we defer to the ALJ's assessment of its credibility. See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991) (noting ALJ is "optimally positioned to observe and assess witness credibility").

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge